No. 21-3008

# United States Court of Appeals for the Third Circuit

UNITED STATES OF AMERICA,

*Petitioner-Appellee*,

v.

DELAWARE DEPARTMENT OF INSURANCE,

*Respondent-Appellant*.

On Appeal from the U.S. District Court for the
District of Delaware (Wilmington)
No. 1:20-cv-00829-MN-CJB

## MOTION TO STAY MANDATE PENDING THE FILING OF A PETITION FOR A WRIT OF CERTIORARI

KATHLEEN P. MAKOWSKI
Deputy Attorney General
1007 Orange Street, Suite 1010
Wilmington, DE  19801
(302) 674-7326
Kathleen.Makowski@Delaware.gov

and

PATRICIA A. DAVIS
State Solicitor
102 W. Water Street
Dover, DE 19904
(302) 257-3233
PatriciaA.Davis@Delaware.gov

JAMES J. BLACK, III
JEFFREY B. MICELI
MARK W. DRASNIN
Black & Gerngross, P.C.
1617 John F. Kennedy Blvd.
Suite 1575
Philadelphia, PA 19103
Tel. (215) 636-1650
jblack@blackgern.com
jmiceli@blackgern.com
mdrasnin@blackgern.com

*Counsel for Respondent-Appellant*
Delaware Department of Insurance

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Page**</u>

*Ambrose v. Blue Cross & Blue Shield of Virginia, Inc.*,
    891 F. Supp.1153 (E.D.Va.1995), *aff'd*, 95 F.3d 41 (4th Cir.1996) ............... 8

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
    367 F.3d 212 (4th Cir. 2004) .............................................................7

*Autry v. Nw. Premium Servs., Inc.,*
    144 F.3d 1037 (7th Cir. 1998) ....................................................7, 8

*B & G Constr. Co., Inc., v. Officer of Workers' Comp. Programs*,
    662 F.3d 233 (3d Cir. 2011) ...........................................................16

*BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.,*
    194 F.3d 1089 (10th Cir. 1999) ........................................................7

*Barnes v. E-Sys., Inc. Group Hosp. Med. & Surgical Ins. Plan*,
    501 U.S. 1301 (1991).......................................................................18

*Barnett Bank of Marion County, N.A. v. Nelson*,
    517 U.S. 25 (1996) ..........................................................................15

*Books v. City of Elkhart*,
    239 F.3d 826 (7th Cir. 2001) ....................................................5, 17

*Bricklayers Local 21 v. Banner Restoration, Inc.*,
    384 F.3d 911 (7th Cir.2004) .............................................................4

*Conkright v. Frommert*,
    556 U.S. 1401 (2009).........................................................................4

*Dehoyos v. Allstate Corp.,*
    345 F.3d 290 (3d Cir. 2003) ....................................................... 6-7

*Doe v. Miller*,
    418 F.3d 950 (8th Cir.2005) .............................................................4

**Cases (Cont.)**                                                           **Page**

*Doe v. Norwest Bank Minnesota, N.A.,*
  107 F.3d 1297 (8th Cir. 1997) ...................................................8

*Genord v. Blue Cross & Blue Shield of Michigan,*
  440 F.3d 802 (6th Cir. 2006) ....................................................7

*Hand v. Scott,*
  888 F.3d 1206 (11th Cir. 2018) ...............................................19

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010) ..................................................................4

*Humana Inc. v. Forsyth,*
  525 U.S. 299 (1999) ...............................................3, 6-7, 9-12

*In re Revel AC, Inc.,*
  802 F.3d 558 (3d Cir. 2015) ...................................................17

*LaBarre v. Credit Acceptance Corp.,*
  175 F.3d 640 (8th Cir. 1999) ....................................................7

*Market Co. v. Hoffman,*
  101 U.S. 112 (1879) ................................................................16

*Maryland v. King,*
  567 U.S. 1301 (2012) .......................................................4, 17, 19

*Moore v. Liberty Nat. Life Ins. Co.,*
  267 F.3d 1209 (11th Cir. 2001) .................................................7

*Nara v. Frank,*
  494 F.3d 1132 (3d Cir. 2007) ...............................................4, 17

*Nat'l Fair Hous. All. v. Travelers Indem. Co.,*
  261 F. Supp. 3d 20 (D.D.C. 2017) ............................................7

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) ..............................................................17

**Cases (Cont.)**                                                                    **Page**

*Ojo v. Farmers Grp., Inc.,*
    600 F.3d 1205 (9th Cir. 2010) ...................................................................7

*Org. for Black Struggle v. Ashcroft,*
    978 F.3d 603 (8th Cir. 2020) ...................................................................18

*Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott,*
    571 U.S. 1061 (2013)............................................................................

*Phillip Morris USA Inc. v. Scott,*
    561 U.S. 1301 (2010)...............................................................................17

*Priorities USA v. Nessel,*
    860 Fed. Appx. 419 (6th Cir. 2021) ........................................................18

*Roland Mach. Co. v. Dresser Indus.,*
    749 F.2d 380 (7th Cir. 1984) ...................................................................17

*Rostker v. Goldberg,*
    448 U.S. 1306 (1980)...........................................................................4, 5

*Sabo v. Metropolitan Life Ins. Co.,*
    137 F.3d 185 (3d Cir. 1998) ............................................................. 14-15

*Thompson v. DeWine,*
    976 F.3d 610 (6th Cir. 2020), *cert. denied,* 141 S. Ct. 2512 (2021) .............18

*United States v. Rhode Island Insurers' Insolvency Fund,*
    80 F.3d 616 (1st Cir. 1996)........................................................................7

*United States ex rel. Chandler v. Cook Cty.,*
    282 F.3d 448 (7th Cir. 2002) .....................................................................5

*United States Dep't of Treasury v. Fabe,*
    508 U.S. 491 (1993)................................................... 1, 3, 6-13, 15

*Wadsworth v. Allied Professionals Ins. Co.,*
    748 F.3d 100 (2d Cir. 2014) ......................................................................7

**Cases (Cont.)**                                                           **Page**

*Wai v. Allstate Ins. Co.*,
  75 F. Supp. 2d 1 (D.D.C. 1999)........................................................7

*Valentine v. Collier*,
  956 F.3d 797 (5th Cir. 2020) ........................................................18

*Veasey v. Abbott*,
  870 F.3d 387 (5th Cir. 2017) ........................................................19

*Voting for Am., Inc. v. Andrade*,
  488 F. App'x 890 (5th Cir. 2012)....................................................19

**Statutes**                                                           **Page**

15 U.S.C. §1012(a) ........................................................... 1, 8-11, 13-15

15 U.S.C. §1012(b) ......................................... 1, 3, 6, 8-9, 11-12, 14, 16

18 *Del. C.* §6920 .........................................................................2, 17, 19

**Rules**                                                                **Page**

U.S. Sup. Ct. R. 10........................................................................ 5-6, 10

Fed. R. App. P. 41 ............................................................................1, 4

## I.    INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 41(d), Appellant Delaware Department of Insurance (the "Department") respectfully moves this Court to stay the issuance of the mandate pending the Department's filing of a petition for a writ of certiorari to the Supreme Court of the United States (the "Cert. Petition").  A stay is warranted because in the absence of a stay, the decision of the Panel will require the Delaware Commissioner of Insurance to violate Delaware's Insurance Code.

The primary issue at the heart of the Cert. Petition is the Department's contention that the Panel's imposition of a threshold requirement on reverse-preemption under the first clause of paragraph 1012(b) of McCarran-Ferguson Act[1] that the "challenged conduct" constitutes the "business of insurance" pursuant to 15 U.S.C. §1012(a) conflicts with precedent of the Supreme Court, the decisions of the other Circuit Courts of Appeals and the plain text of the McCarran-Ferguson Act. The mandate should be stayed pending the petition for writ of certiorari because the Cert. Petition presents substantial questions, and there is good cause for a stay.  The Panel's interpretation of the McCarran-Ferguson Act gives rise to several substantial questions of federal law, there is a reasonable probability that certiorari will be

---

[1] Reverse-preemption" refers to the concept that federal statutes not specifically identified in the McCarran-Ferguson Act or not yet enacted would not automatically override state insurance regulation, otherwise referred to as "first-clause" preemption (from the first clause of §1012(b)). This is contrasted with the second clause of §1012(b) which carves out a narrower exception from antitrust laws.  *See generally U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 505 (1993).

granted and a fair prospect that the judgment will be reversed, and Appellant would be irreparably harmed absent a stay.

## II.    PROCEDURAL HISTORY AND STATEMENT OF THE CASE

Section 6920 of Delaware's Insurance Code is part of Delaware's statutory scheme regulating insurance companies and the practice of insurance in Delaware. It prohibits the Insurance Commissioner of the State of Delaware (the "Commissioner") from disclosing information or documents provided to the Department as part of the application and financial examination process.  18 *Del. C.* § 6920.

This case arises from a petition by the IRS to issue a summons to compel the Commissioner to do what Section 6920 forbids:  disclose documents from insurers relating to licensing and financial examinations of those insurers without complying with the safeguards of Delaware law.[2]

On June 19, 2020, the Petitioner, United States of America (the "IRS") filed a Petition (the "Petition") to enforce the Summons in the United States District Court for the District of Delaware (D.I. 1).  On July 16, 2021, Magistrate Judge Burke issued a Report and Recommendation (the "R&R") recommending granting the Petition. (D.I. 28).  By Order dated September 29, 2021, this Court adopted the R&R

---

[2] Section 6920 allows production to law enforcement entities or the agencies of the United States where that entity signs a written agreement to hold the documents confidential and in a manner consistent with section 6920.  18 *Del. C.* § 6920  The IRS has refused to execute such an agreement.

over the Department's Objections, and granted the Petition ("9/29/21 Order") (D.I. 36). On the same day, this Court also entered an "Errata Order" making certain non-substantive changes to the R&R (D.I. 37) and a Memorandum Opinion setting forth the basis for the 9/29/21 Order (D.I. 35).

On November 1, 2021, the DDOI initiated an appeal in the Third Circuit (D.I. No. 1). On April 21, 2023, the Third Circuit issued an Opinion (D.I. No. 48) and Judgment (D.I. No. 49) affirming the District Court, and holding that 15 U.S.C. § 1012(a) imposed an additional part to the test for reverse-preemption under the McCarran-Ferguson Act. Thereafter, on June 5, 2023, the DDOI filed a Petition for Rehearing En Banc (D.I. No. 53) which was denied by the Court on June 16, 2023. (D.I. No. 54).

Although the Supreme Court and each of the other Circuit Courts of Appeals have employed a three-factor test that tracks the statutory language of the ***first clause*** of Section 1012(b), the Panel's opinion relied upon an earlier Third Circuit panel decision which first requires a showing that the "challenged conduct" constitutes the "business of insurance," *before* going on to employ the three-part test established by the Supreme Court and adopted by every other Circuit Court to consider the issue.[3]

---

[3] As set forth in greater detail *infra*, the Third Circuit is now an outlier among all other federal appellate courts which have determined the issue. Those Courts apply the three-part test of *United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 504 (1993) and *Humana Inc. v. Forsyth,* 525 U.S. 299, 308 (1999) that state laws reverse-preempt federal laws under the McCarran-Ferguson Act if (1) the state statute was enacted 'for the purpose of regulating the business of insurance,' (2) the

## III.  ARGUMENT

This Court can issue a stay of its mandate pending the filing of a certiorari petition where the petition presents a "substantial question" and there is "good cause" for a stay. Fed. R. App. P. 41(d).  This standard requires the movant to show:

> (1) a reasonable probability that the Supreme Court will grant certiorari;

> (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment;[4] and

> (3) a likelihood of irreparable injury absent a stay.

*Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (citing *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers); *Bricklayers Local 21 v. Banner Restoration, Inc.*, 384 F.3d 911, 912 (7th Cir.2004) (Ripple, J., in chambers); *Doe v. Miller*, 418 F.3d 950, 951 (8th Cir.2005); Fed. R. App. P. 41(d) advisory committee's note).  Each factor is satisfied in this case.  A stay of the mandate under Rule 41(d) should be granted.

---

federal statute does not 'specifically relate to the business of insurance,' and (3) the federal statute would 'invalidate, impair, or supersede' the state statute.

[4] This is often stated as "a fair prospect that a majority of the Court will vote to reverse the judgment below." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (*per curiam*). *Maryland v. King*, 567 U.S. 1301, 1302, (2012) (Roberts, CJ, in Chambers) (quoting *Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers)).

.

**A. There is a Reasonable Probability that the Supreme Court Will Grant Certiorari**

In order to evaluate the likelihood of the Supreme Court's grant of certiorari and the potential for ultimate success on the merits, this Court may look to "the issues that the applicant plans to raise in the certiorari petition," "the Supreme Court's treatment of other cases presenting similar issues," and "the considerations that guide the Supreme Court in determining whether to issue a writ of certiorari." *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers).

A stay is granted not on the Court's view of the merits, but rather to determine the prospect of reversal by the Supreme Court as a whole. *Rostker v. Goldberg*, 448 U.S. 1306, 1309 (1980) (Brennan, J., in chambers). *See, also, U.S. ex rel. Chandler v. Cook Cty.*, 282 F.3d 448, 450 (7th Cir. 2002) (Ripple, J., in chambers) (granting a stay pending certiorari despite unanimous panel ruling and refusal for rehearing en banc based on not only "the conflict among the circuits that have ruled on the matter" but also because "[t]he issue is important to the municipalities across the United States").

There is a reasonable probability that certiorari will be granted in this case. This issues raised by the Department in this matter satisfy two of the criteria for granting review on a writ of certiorari set forth in Rule 10 of the United States Supreme Court Rules:

(a)    a United States court of appeals has entered a

> decision in conflict with the decision of another United States court of appeals on the same important matter…..
>
> *  *  *
>
> (c) . . . a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.

U.S. Sup. Ct. R. 10(a) and (c).

In the first instance, the Panel's decision satisfies U.S. Sup. Ct. R. 10(a), as it is in conflict with all the other federal appellate courts that have articulated a test for reverse-preemption under the first clause of 15 U.S.C. §1012(b) of the McCarran-Ferguson Act.[5]  As discussed below, the Supreme Court issued seminal decisions in 1993 and 1999 on reverse-preemption under the first clause of § 1012(b) of the McCarran-Ferguson-Act in which the Court used a three-part test, mirroring the statutory language of the first clause of § 1012(b).[6]  United States *Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993) and *Humana, Inc. v. Forsyth*, 525 US 299, 307 (1999).

The Fifth Circuit has characterized the Supreme Court's articulation of the "framework in which [McCarran-Ferguson Act] preemption questions are to be

---

[5] *See* n. 2, above.

[6] "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . .."  15 U.S.C. § 1012(b).

addressed" as:

> In sum, in extremely clear and specific language the
> [*Humana*] Court identified the following three
> [McCarran-Ferguson Act] preemption threshold
> requirements: (1) the federal law in question must not be
> specifically directed at insurance regulation; (2) there must
> exist a particular state law (or declared regulatory policy)
> enacted for the purpose of regulating insurance; and (3)
> application of the federal law to the controversy in
> question must invalidate, impair or supercede that state
> law.

*Dehoyos v. Allstate Corp.*, 345 F.3d 290, 294–95 (5th Cir. 2003).

Since *Humana*, ten other Circuit Courts have addressed the criteria for
reverse-preemption under the first clause of the McCarran-Ferguson Act. Each of
those Circuits uses the three-part test, citing either *Fabe* or *Humana* as support for
that test.[7] Two circuits, the Federal and D.C. Circuits, do not appear to have decided
the issue.[8]

---

[7] *United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 619 (1st Cir. 1996) (*citing Fabe*); *Wadsworth v. Allied Professionals Ins. Co.* 748 F.3d 100, 109 n. 14 (2d Cir. 2014) (*citing Fabe*); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 231 (4th Cir. 2004) (*citing Humana*); *Dehoyos*, 345 F.3d at 294–95 (5th Cir. 2003) (citing *Humana*)*; Genord v. Blue Cross & Blue Shield of Michigan*, 440 F.3d 802, 806 (6th Cir. 2006) (*citing Fabe); Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1041-42 (7th Cir. 1998) (*citing Fabe); LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640, 643 (8th Cir. 1999) (citing *Humana); Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1209 (9th Cir. 2010) (citing *Humana); BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1098 (10th Cir. 1999) (*citing Fabe); Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1220 (11th Cir. 2001) (citing *Humana*)*.*

[8] District court decisions in the D.C. District Court have adopted the *Humana* three-part test. *See, e.g., Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 34 (D.D.C. 2017) (*citing Humana*); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 5 (D.D.C. 1999) (citing *Humana*).

Prior to *Fabe,* several circuit courts had held that the additional prong required by the Panel (whether the challenged conduct constitutes the "business of insurance") was an additional factor to the standard three-part test, but have sourced it in § 1012(b) (not in § 1012(a), as done by the Panel).  Since *Fabe,* three circuits have expressly ruled that *Fabe* abrogated that additional prong, sourcing it to § 1012(b).  *Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1041-42 (7th Cir. 1998) ("The problem with this approach is that it casts too small a net to capture all of the statutes that were 'enacted ... for the purpose of regulating the business of insurance'") (citing *Fabe*, 508 U.S. at 505); *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1305 n.8 (8th Cir. 1997) ("despite the apparent agreement of the parties to the contrary, the application of the McCarran–Ferguson Act in this case does not require a specific conclusion that the allegedly improper activities of Voyager constituted the 'business of insurance'") (citing *Fabe*); A*mbrose v. Blue Cross & Blue Shield of Virginia, Inc.*, 891 F. Supp.1153, 1158 n. 4 & 5 (E.D.Va.1995), *aff'd*, 95 F.3d 41 (4th Cir.1996) (unpublished *per curiam*) (determining *Fabe* required use of three-part test rather than prior cases' four-part test).

Since *Humana* (1996), none of the other circuit courts have discussed the applicability of the additional factor previously used by the Panel. Instead, they simply recite the three part test as the applicable test, citing either *Fabe* or *Humana*.[9]

In the second instance, as discussed more fully in Section "B" below, the Panel's determination is in conflict with *Fabe* and *Humana's* determination that a three part test applies to McCarran-Ferguson reverse-preemption. It also contravenes *Fabe*'s holding that "[t]he broad category of laws enacted for the purpose of regulating the business of insurance . . .. necessarily encompasses more than just the 'business of insurance.'" 508 U.S. at 506.

The Panel's dismissal of the other circuits' decisions and *Fabe* and *Humana* is neither persuasive nor does it militate against the grant of certiorari by the Supreme Court. The Panel asserts that none of the circuit decisions and neither *Fabe* nor *Humana* considered and foreclosed the use of § 1012(a) to provide a fourth factor to the three-factor test those Courts employed.[10] This argument actually suggests that certiorari would be granted by the Supreme Court. According to the Panel, the Third Circuit is the only circuit court since 1999 which gives the ***full*** test for McCarran-Ferguson Act reverse-preemption, and that those Circuit Court decisions

---

[9] *See generally,* cases cited at n. 7, above.

[10] As discussed above, and in Section "B," below, this is unconvincing because prior circuits have rejected the identical factor when it was sourced to § 1012(b), the text of § 1012(a) does not support the Panel's interpretation, and the numerous cases deciding reverse-preemption purport to be providing a comprehensive test, with no suggestion there are additional factors.

purporting to give a three-factor test are incomplete. It also argues that *Humana's* recitation of the test for reverse-preemption under the McCarran-Ferguson Act is incomplete. Even if this were correct (and as discussed in Section "B," below, it is not) certiorari would be appropriate because, under the Panel's formulation, the requirement of a fourth part for reverse-preemption is an important question of federal law that has not been, but should be, settled by the Supreme Court (*See* U.S. Sup. Ct. R. 10(c)).

The Panel's tenuous justification in the face of contrary Supreme Court and sister-circuit law suggests further guidance from the Supreme Court is necessary and warranted. Based on the current Supreme Court law and the split between the Third Circuit and the circuit courts of appeal, there is a "reasonable probability" that certiorari will be granted.

## B. There Is a Fair Prospect that the Panel's Judgement Will Be Reversed

The Panel determined that 15 U.S.C. § 1012(a) requires, in addition to the three factors identified by *Fabe, Humana* and each of the other Circuits that have addressed the issue, a "threshold" or additional factor: "whether the challenged conduct constitutes the 'business of insurance.'" Panel Opinion (hereinafter "Op.") at 19. This decision was incorrect, and there is a reasonable probability, or "fair prospect," that five justices of the Supreme Court would reverse the Panel's determination because it conflicts with *Fabe* and *Humana*, which set out a three-part

10

test, and because it is completely unsupported by the plain text of § 1012(a), which

nowhere mentions "conduct" or suggests conduct must constitute the "business of

insurance."

### 1. The Panel's Decision Conflicts With *Fabe* and *Humana*

*Humana,* as did many Courts discussing the McCarran-Ferguson Act, set out

a history of the Act. 525 U.S. at 306.  The *Humana* Court specifically referred to

§1012(b) as the operative provision of the McCarran-Ferguson Act for reverse-

preemption:

> In § 2(b) of the [McCarran-Ferguson] Act—the
> centerpiece of this case—Congress ensured that federal
> statutes not identified in the Act or not yet enacted would
> not automatically override state insurance regulation.
> Section 2(b) provides that when Congress enacts a law
> specifically relating to the business of insurance, that law
> controls. See § 1012(b). The subsection further provides
> that federal legislation general in character shall not be
> "construed to invalidate, impair, or supersede any law
> enacted by any State for the purpose of regulating the
> business of insurance." *Ibid.*

*Id.* at 306-07.

The Court then announced the ***test for the McCarran-Ferguson Act***: "The

McCarran–Ferguson Act ***thus*** precludes application of a federal statute in face [sic]

of state law 'enacted ... for the purpose of regulating the business of insurance,' if

the federal measure does not 'specifically relat[e] to the business of insurance,' and

would 'invalidate, impair, or supersede' the State's law." *Id.* at 307 (citing *Fabe*, 508

11

U.S. at 501) (emphasis added) (ellipses in original).[11]

This additional "threshold" element grafts the narrow definition of "the business of insurance" which is part of the test for the ***second clause*** (relating to a narrow antitrust exemption not applicable in this case) onto the test designed for the first clause (relating to general regulation).  As recognized by the Supreme Court in *Fabe*, the first clause "was intended to further Congress' primary objective of granting the States ***broad regulatory authority*** over the business of insurance" and the second clause "accomplishes Congress' secondary goal [of] carv[ing] out only a ***narrow exemption*** for 'the business of insurance' from the federal antitrust laws." *Fabe*, 508 U.S. at 505 (emphasis added).

The Supreme Court clarified that in cases under the antitrust exception contained in the second clause, a court must undertake an initial threshold determination that challenged conduct constitutes "the business of insurance." However, *Fabe* then proceeded to distinguish and explain that, rather than dealing with the second clause of §1012(b), "[w]e deal here with the ***first*** clause, which is not so narrowly circumscribed." *Id*. at 504 (emphasis in original).   The Court

---

[11] The Panel's attempt to suggest that *Humana, Fabe* and each of the Circuits' recitation of a three-part rule was intentionally incomplete, and that Courts often do not discuss every factor of a multi-part test (Op. at 27-29, 31-32) is unconvincing on its face, as it presupposes that each Court, when purporting to state a test for reverse-preemption, cited the same factors, and intentionally failed to cite an additional factor.  Its attempt further fails as in both *Fabe* and *Humana* the court did not need to decide all three of the factors because of agreements of parties, or assumptions, yet nevertheless, each recited ***all three factors and no others***.

contrasted the formulations:

> The language of §2(b) is unambiguous: The first clause
> commits laws "enacted ... for the purpose of regulating the
> business of insurance" to the States, while the second
> clause exempts only "the business of insurance" itself
> from the antitrust laws. To equate laws "enacted ... for the
> purpose of regulating the business of insurance" with the
> "business of insurance" itself, as petitioner urges us to do,
> would be to read words out of the statute. This we refuse
> to do.

*Id*.

In explaining this distinction, the Court held that "[t]he broad category of laws

enacted for the purpose of regulating the business of insurance consist of laws that

possess the end, intention or aim of adjusting, managing or controlling the business

of insurance." *Id*. at 505 (citation and quotation marks omitted).  As such, the Court

explained that "[t]his category necessarily encompasses more than just the 'business

of insurance.'" *Id*.

The Panel's decision does exactly what *Fabe* said it could not do:  in requiring

"conduct" to "constitute the business of insurance" for first clause reverse-

preemption, its decision  "read[s] words out of the statute."

## 2.  The Panel's Decision Conflicts With the Plain Text of 15 U.S.C. § 1012(a)

In addition to being contrary to the Supreme Court's decisions in *Humana* and

*Fabe*, the Panel's interpretation of § 1012(a) conflicts with its plain text.  The Panel,

relying exclusively on a pre-*Humana* panel decision of the Third Circuit, determined

that §1012(a) requires courts to make a threshold determination as to "whether the

***conduct at issue broadly constitutes*** the 'business of insurance' when endeavoring

to determine whether a state law is within the ambit of the Act's protection."  Op. at

19-20 (citing *Sabo v. Metropolitan Life Ins. Co.*, 137 F.3d 185, 189 (3rd Cir. 1998))

(emphasis added).

However, this threshold, based on whether "conduct" "constitutes the

business of insurance", is entirely absent from the text of § 1012(a), which provides:

> **a) State regulation**. The business of insurance, and every
> person engaged therein, shall be subject to the laws of the
> several States which relate to the regulation or taxation of
> such business.

Nothing in § 1012(a) even suggests that "conduct" should be considered,

much less that such conduct must "constitute the business of insurance," and *Sabo*'s

reading of the statute to employ this "conduct" threshold is completely untethered to

§ 1012(a)'s text.  *Sabo* does correctly note that "[o]f these state 'laws relat[ing] to

the regulation or taxation' of the insurance business, 15 U.S.C. §1012(a), the next

subsection [§ 1012(b)] protects from federal preemption a special class of state laws

'enacted ... for the purpose of regulating the business of insurance.'" 137 F.3d at

190.  And the Court in *Sabo* further acknowledged that "[t]he focus of section

1012(b) is not directed toward the business of insurance itself, but rather toward ***a***

***certain subset of laws*** relating to insurance regulation under section 1012(a)." *Id*. at

191 (emphasis added).

It is impossible to reconcile *Sabo'*s above analysis with *Sabo*'s (and the Panel's) actual interpretation of § 1012(a), in which the Court ignores the plain text of the statute and grafts onto it a factor used only in antitrust cases by concluding, without explanation or support, "[whether a state law was meant to fall within the McCarran-Ferguson Act's ambit] is achieved by deciding whether the activity in question constitutes the business of insurance…." *Id*.

Just as laws enacted for the purpose of regulating the business of insurance necessarily encompass more than just the business of insurance, *Fabe*, 508 U.S. at 505, laws relating to the business of insurance (the class of laws afforded protection pursuant to § 1012(a)) encompass more than just laws enacted for the purpose of regulating the business of insurance.  The Supreme Court, in *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996), discussed the definition of the word "relates" in the context of another factor of the reverse-preemption test; specifically, whether a federal statute "specifically relates to the business of insurance." *Id*. at 38. Endorsing a broad reading of the statutory scheme, which undermines both *Sabo* and the Panel's choice to employ a much narrower scope, the Court explained that "[t]he word 'relates' is highly general, and this Court has interpreted it broadly ***in other preemption contexts***." *Id*. (emphasis added).  The Supreme Court's reading of the test in *Barnett* is an intuitive one, as for the Act to carry out its broad mandate of "regulating the business of insurance," laws "relating" to the "business of insurance"

must necessarily go far beyond "the business of insurance."

However, the Panel's reading of the "conduct" requirement into the statute artificially narrows the scope of a broad Act, such that it applies only in circumstances implicating "conduct that constitutes the business of insurance." The Panel's approach is improper in that it contravenes the plain text of the statute, which Congress wrote such that "conduct" is a relevant factor only in the narrowest anti-trust considerations contained in the second clause of § 1012(b). However, the Panel's approach is also inappropriate because it frustrates the *purpose* of the Act by excluding from its protection potentially innumerable state laws which are "relating to the business of insurance," a category which necessarily subsumes "laws enacted for the purpose of regulating the business of insurance". In so doing, *Sabo* and the Panel wrote words out of the statute. This error violates a fundamental tenant of statutory construction: interpretations should not render portions of the statute superfluous, void or insignificant. *See B & G Constr. Co., Inc., v. Officer of Workers' Comp. Programs*, 662 F.3d 233, 248-49 (3d Cir. 2011) (citing *Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879)).

In this regard, the Panel's ruling constitutes an important question of federal law that is in conflict with relevant decisions of the Supreme Court, and there is a "reasonable probability" that certiorari will be granted and a "fair prospect" that five Justices will vote to reverse the Panel's ruling, and a stay of the mandate should be

16

granted.

## C. Absent a Stay, the Department Will Suffer Irreparable Harm

The Panel determination requires that Delaware's Commissioner of Insurance violate Delaware's Insurance Code by providing documents he is statutorily prohibited from providing by 18 *Del. C.* § 6920.  This creates irreparable harm, satisfying that requirement for a stay of the mandate.

In addition to the merits of the case, "[t]he other assessment usually undertaken in deciding an application for stay of mandate is whether irreparable injury will take place if the stay is not granted." *Books*, 239 F.3d at 828; *Nara*, 494 F.3d at 1133. This assessment "assume[s] the applicant's position on the merits is correct." *Philip Morris*, 561 U.S. at 1305 (Scalia, J., in chambers).  Irreparable harm "refer[s] to 'harm that cannot be prevented or fully rectified' by a successful appeal." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

Assuming that the Department's position on the merits is correct, irreparable injury will occur if a stay of the mandate is not granted.  "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers), quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see also*

*Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2512 (2021); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 571 U.S. 1061 (2013) (Scalia, J., concurring).

The irreparable harm, as the Sixth Circuit recognized in *Priorities USA v. Nessel*, 860 Fed. Appx. 419, 423 (6th Cir. 2021), is "an injury in the infringement of the state's sovereign interest in passing and enforcing its laws." Even when the potential for adverse consequences is minimal, failing to effectuate state statutes causes irreparable harm. *Id*. (reversing injunction to prevent enforcement of state's voter-transportation law); *see also Barnes v. E-Sys., Inc. Group Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1304 (1991) (Scalia, J., in chambers) (finding evidence of irreparable harm satisfied where there is potential for "interference with the State's orderly management of its fiscal affairs").

Cases that have addressed this issue find that the State will suffer irreparable harm where a state entity is commissioned to do something – through a statute enacted by representatives of its people – and the effect of the requested relief would stop or prevent the state entity from performing its statutory duty. *See, e.g. Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020) (state prison officials entitled to stay pending appeal of preliminary injunction that required officials to immediately implement more drastic COVID measures, beyond CDC guidelines); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020) (injunction against enforcement of Texas

laws regulating voter registration activity constituted irreparable harm to state); *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018) (state clemency board entitled to stay because it would be irreparably harmed if it could not apply its own laws to grant clemency to eligible applicants); *Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017) (motion for stay pending appeal granted where State denied ability to enforce voter registration law); *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 904 (5th Cir. 2012) (injunction against enforcement of Texas laws regulating voter registration activity constituted irreparable harm to the state).

Notably, courts do not weigh the importance of any interests in determining whether a state was irreparably harmed. The test is whether: (1) there is a statute and (2) the state is prevented from performing under that statute. Any time a court prevents the State from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury. *Maryland v. King, supra.*

This case is no different. That injury is present here. If the Summons is enforced, that enforcement will de facto prohibit the Commissioner from performing his statutory duties. This will directly cause the Commissioner to violate his express duties under Section 6920 of the Delaware Captive Act – a law that was enacted in the Delaware Assembly by state legislators who were elected by the residents of Delaware, and which governs and proscribes the Commissioner's duties. Without question, if a stay is not granted, the enforcement of the Summons will infringe upon

Delaware's sovereign interest in the Delaware Insurance Code, and the Delaware Captive Act which forms a part of its integrated scheme.

Absent a stay of the mandate, Movant would be compelled to violate the law of the State it serves, constituting serious and irreparable harm to both.

## IV.   CONCLUSION

For the foregoing reasons, Appellant, the Delaware Department of Insurance respectfully requests that this Honorable Court stay the mandate pending certiorari to the Supreme Court of the United States.

Respectfully Submitted,

KATHLEEN P. MAKOWSKI
Deputy Attorney General
1007 Orange Street, Suite 1010
Wilmington, DE  19801
(302) 674-7326
Kathleen.Makowski@Delaware.gov

and

PATRICIA A. DAVIS
State Solicitor
102 W. Water Street
Dover, DE 19904
(302) 257-3233
PatriciaA.Davis@Delaware.gov

/s/ James J. Black, III
JAMES J. BLACK, III
JEFFREY B. MICELI
MARK W. DRASNIN
Black & Gerngross, P.C.
1617 John F. Kennedy Blvd.
Suite 1575
Philadelphia, PA 19103
(215) 636-1650
jblack@blackgern.com
jmiceli@blackgern.com
mdrasnin@blackgern.com

*Counsel for Respondent-Appellant*
Delaware Department of Insurance

<u>**COMBINED CERTIFICATIONS**</u>

1.  **Bar Membership:**  In accordance with L.A.R. 28.3(d), I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.  **Word Count:**  I hereby certify that the Motion to Stay Mandate Pending the Filing of a Petition for Certiorari ("this Motion") complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) because the Petition has been prepared in proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.  Further, this Brief also complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this Motion contains **4985** words, excluding those parts excluded by Fed. R. App. P. 32(f), calculated by using the word count function of Microsoft Word.

3.  **Virus Scan:**  The electronic copy of this Motion was scanned for electronic viruses on June 22, 2023 before transmission to this Court using the Avast Business Antivirus software version 23.5.2755 and no viruses were detected.

4.  Pursuant to Local Rules 25.1(a) and 27.2, no paper copies of this Motion will be provided unless directed by the Clerk. Fed. R. App. P. 27(d)(3)

5.  **Service:**  On June 22, 2023, I electronically filed the foregoing Motion with the Clerk for the Court of the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF System.  Participants in the case are

registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*Counsel for Petitioner/Appellee United States of America*

Dated:  June 22, 2023              /s/ *James J. Black, III*
                                   James J. Black, III
                                   Black & Gerngross, P.C.
                                   1617 John F. Kennedy Blvd.
                                   Suite 1575
                                   Philadelphia, PA  19103
                                   Telephone: (215) 636-1650
                                   Telecopier: (215) 636-0268
                                   Email: jblack@blackgern.com