## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff-Appellee** | ) |
| | ) |
| v. | ) **No. 21-3008** |
| | ) |
| **STATE OF DELAWARE** | ) |
| **DEPARTMENT OF INSURANCE,** | ) |
| | ) |
| **Defendant-Appellant** | ) |

## OPPOSITION OF THE UNITED STATES TO APPELLANT'S MOTION TO STAY THE MANDATE PENDING THE FILING OF A PETITION FOR A WRIT OF CERTIORARI

This Court issued a published opinion affirming the District Court's order enforcing a summons issued by the Internal Revenue Service (IRS), to the Delaware Department of Insurance, Bureau of Captive and Financial Insurance Products (DDOI). The Court later denied the DDOI's petition for panel rehearing and rehearing en banc. The DDOI has now moved to stay the mandate pending a petition for a writ of certiorari. There is little chance that the Supreme Court will grant certiorari, and the DDOI's motion for a stay should be denied.

## STATEMENT

This case involves "micro-captive" insurance companies, which the IRS has identified as having the potential for tax avoidance or evasion.

(Op. 11.)* An insured business can deduct its insurance premiums, but those premiums generally are taxable income to the insurance company. (Op. 9.) A captive insurance company is one that is wholly owned and controlled by its insured. (Op. 7.) A micro-captive insurance company receives premiums from its insured that fall below a specified maximum. (Op. 10.) It does not pay tax on the premiums, only on its investment income. (Op. 10.) Although micro-captive insurers can be used for legitimate risk management, they can also be used as a conduit for inflated premiums that the insured deducts and the micro-captive accumulates tax free. (Op. 11-12.)

The DDOI licenses and regulates captive insurers. (Op. 7-8.) Section 6920 of the Delaware Insurance Code provides that materials submitted by captive insurers to the DDOI are confidential, except that § 6920(2) allows disclosure to the United States if the receiving agency agrees in writing to keep the materials confidential. (Op. 8-9.)

In this case, the IRS seeks to determine whether Artex Risk Solutions, Inc., and Tribeca Strategic Advisors, LLC, are liable for

---

* "Op." refers to the pages of this Court's slip opinion. "Mot." refers to the pages of appellant DDOI's motion to stay the mandate. "I.R.C." refers to the Internal Revenue Code of 1986 (26 U.S.C.).

penalties under I.R.C. § 6700 for promoting abusive tax shelters involving micro-captive insurers.  (Op. 12.)  On October 30, 2017, the IRS issued a summons to the DDOI for records regarding Artex and Tribeca.  (Op. 13.)  The DDOI objected, and the IRS brought a summons enforcement proceeding in the District Court.  (Op. 14.)  The District Court rejected the DDOI's argument that § 6920 "reverse preempts" under the McCarran-Ferguson Act (15 U.S.C. § 1011-1015) the summons authority granted to the IRS by the Internal Revenue Code.  (Op. 15-17.)  This Court affirmed and later denied panel rehearing and rehearing en banc.  The DDOI now seeks to stay the mandate while it petitions for a writ of certiorari.

## ARGUMENT

Federal Rule of Appellate Procedure 41(d)(1) allows a motion to stay the mandate pending the filing of a petition for a writ of certiorari. The movant must show a substantial question and good cause for a stay.  *Id.*  A mandate should be stayed only in "exceptional cases" where the movant demonstrates: "(1) a reasonable probability that the Supreme Court will grant *certiorari*; (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment; and (3) a

likelihood of irreparable injury absent a stay." *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007). Moreover, "[i]n a close case, the movant should make a showing that, on balance, the interests of the parties and the public favor a stay." *Id.* The DDOI fails on every factor.

### A.  There is no reasonable probability that the Supreme Court will grant certiorari

Supreme Court Rule 10 emphasizes that the granting of certiorari is not a matter of right but an exercise of judicial discretion and that certiorari will be granted only for "compelling reasons." The DDOI invokes (Mot. 5-6) three reasons for which Rule 10 states that certiorari might be granted, *viz.*, a decision on an important question of federal law: (i) that is "in conflict with the decision of another United States court of appeals on the same important matter"; (ii) "that has not been, but should be, settled by this Court"; or (iii) that is in conflict "with relevant decisions of this Court." S. Ct. R. 10(a), (c).

In its legal framework for analyzing issues under the McCarran-Ferguson Act, this Court asks a threshold question that other courts have not explicitly asked in the same way. But the DDOI has not shown that this Court's framework conflicts with any decision of the Supreme Court or any court of appeals. (Mot. 5-16.)

As this Court explained (Op. 5-6), the McCarran-Ferguson Act begins with a declaration of policy in 15 U.S.C. § 1011 "that the continued regulation and taxation by the several States of the business of insurance is in the public interest."  Next, 15 U.S.C. § 1012 provides:

> **(a) State regulation.**—The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

> **(b) Federal regulation**—No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

It is settled that the touchstone of the "business of insurance" is the relationship between the insurer and its insured, including the types of policies to be issued; the reliability, interpretation, and enforcement of policies; the setting of premiums; policy advertising and sales; and the licensing of companies and agents.  (Op. 23-24.)  There is also no dispute that the first clause of § 1012(b) (applicable except for

antitrust cases) allows state law to reverse preempt federal law if:
(i) the federal law does not specifically relate to the business of
insurance; (ii) the state law was enacted for the purpose of regulating
the business of insurance; and (iii) applying the federal law would
invalidate, impair, or supersede the state law.  (Op. 19.)

The DDOI objects to this Court's refusal to relegate § 1012(a) to
surplusage and instead to recognize that § 1012(a) poses a "threshold
question" asking "whether the challenged conduct broadly constitutes
the 'business of insurance' in the first place."  (Op. 18-19.)  As this Court
explained, if the challenged activity is wholly unrelated to the business
of insurance, then the McCarran-Ferguson Act (enacted to protect state
regulation of the business of insurance) does not apply and a reverse-
preemption analysis under § 1012(b) is unnecessary.  (Op. 20-21.)

As this Court explained (Op. 24-33), no other opinion has
confronted and rejected this Court's recognition that § 1012(a) imposes
the threshold question whether the challenged conduct broadly
constitutes the business of insurance.  To be sure, some courts that
formerly posed that question as part of a four-factor § 1012(b) analysis
have reduced the § 1012(b) analysis to the three-factor test stated

above.  But neither the reduction of the § 1012(b) analysis, nor its application to an issue that has already satisfied the § 1012(a) threshold, negates the existence of that threshold.

More important, despite any rhetorical differences, this Court's analytical framework is consistent with that of the Supreme Court in *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491 (1993).  *Fabe* considered an Ohio statute that gave fifth priority to claims of the United States in proceedings to liquidate an insolvent insurance company, in conflict with a federal statute that gave first priority to federal claims.  *Id.* at 493.  The Court held that the Ohio statute prevailed to the extent that it protected policyholders by giving priority to their claims and to administrative expenses.  *Id.* at 493, 508-09.  The federal statute prevailed as to all other claims.  *Id.* at 494, 508-09.  The Court contrasted the Ohio statute "to the extent that it regulates policyholders" with the same statute "[t]o the extent that it is designed to further the interests of other creditors."  *Id.* at 508.  Giving priority to the claims of policyholders was quintessentially the business of insurance.  "The preferences conferred upon employees and other

-8-

general creditors, however, do not escape pre-emption because their connection to the ultimate aim of insurance is too tenuous." *Id.* at 509.

Admittedly, the Supreme Court framed the question under § 1012(b) as whether the Ohio law was enacted for the purpose of regulating the business of insurance. However, this Court correctly recognized (Op. 27-28) that the Supreme Court answered its question consistently with this Court's threshold analysis by examining whether each action at issue (the payment of various claims) fell within the business of insurance. *Fabe*, 508 U.S. at 508-09. As the Supreme Court explained, every decision made by an insurance company somehow affects its reliability, but indirect effects are typically insufficient for a state law to reverse-preempt a federal law under the McCarran-Ferguson Act. *Id.* Conceptually, to divide a single statute into parts that regulate the business of insurance and parts that are too indirect or tenuous to do so requires asking whether each part regulates an action that comes within the business of insurance.

Because this Court's legal framework for analyzing McCarran-Ferguson issues is sound and does not conflict with any decision of the

Supreme Court or another court of appeals, there is no reasonable
probability that the Supreme Court will grant certiorari.

## B.    There is no reasonable possibility that the Supreme Court will reverse this Court

Should the Supreme Court grant certiorari, it will likely parse
§ 6920 like it did the Ohio priority statute in *Fabe* and focus on
§ 6920(2).  Section 6920(2) allows the DDOI to disclose insurer licensing
and regulatory submissions to law-enforcement officials or agencies of
the United States "so long as such official or agency agrees in writing to
hold it confidential and in a manner consistent with this section."  Even
without this Court's threshold question, § 6920(b) presents the question
under *Fabe* whether that specific confidentiality provision is a law
enacted for the purpose of regulating the business of insurance.  *See
Fabe*, 508 U.S. at 508-09.  The DDOI does not address this Court's
correct conclusion that the answer is "no."

Whether framed as conduct under this Court's threshold analysis
or as a statute under *Fabe*, the DDOI is asserting a right to withhold
from the IRS documents collected in the licensing and regulation of
captive insurers absent a written confidentiality agreement.  (Op. 34-
35.)  But obstructing an IRS investigation by withholding documents is

not the business of insurance and does not serve the purpose of regulating the business of insurance.  It does not affect the status of micro-captives as reliable insurers, placing it "somewhat removed from the relationship between the insurance company and the policyholder." (Op. 36-37 (internal quotations marks omitted).)

This Court also correctly rejected the DDOI's contention that compliance with an IRS summons "would lead to a change in behavior by captive insurers (or their managers) that would reduce the reliability of captive insurers." (Op. 37.)  The requirements for licensure, the DDOI's authority to obtain documents, and its ability to impose consequences remain unchanged.  (Op. 37-39.)  Moreover, because the IRS could obtain the same documents via a direct summons to the captive insurer, "insurance companies will have no plausible reason" to withhold the same information from the DDOI.  (Op. 39.)

In sum, enforcing the summons "will neither undermine the insurer-insured relationship nor the insurer's reliability as an insurer." (Op. 39-40.)  Thus, § 6920(2) does not have the purpose of regulating the business of insurance, and adherence to it is not an action constituting

that business.  Because there is no infirmity in this Court's analysis of

§ 6920(b), there is no reasonable possibility of Supreme Court reversal.

## C.    The DDOI has not shown a likelihood of irreparable injury

The DDOI argues that it will suffer irreparable injury by not

being able to enforce the confidentiality provisions of § 6920.  (Mot. 17-

20.)  It appears to suggest that compliance with the IRS's summons

would cause irreparable injury unless and until the Supreme Court

indicates otherwise.

That position is contrary to *Church of Scientology of California v.*

*United States*, 506 U.S. 9 (1992), where the Supreme Court held that

compliance with an IRS summons does not moot litigation regarding its

enforcement.  "While a court may not be able to return the parties to the

*status quo ante*—there is nothing a court can do to withdraw all

knowledge or information that IRS agents may have acquired by

examination of the tapes—a court can fashion *some* form of meaningful

relief in circumstances such as these."  *Id.* at 12-13.  For example, a

court can order the IRS to return original records or return or destroy

copies.  *Id.* at 13.  Or, in this case, this Court can order the IRS to hold

records produced by the DDOI consistent with the confidentiality

-12-

provisions of § 6920(2)—with that order subject to revision if the IRS

prevails (as we believe it will).  Thus, any arguable injury to the DDOI

is not irreparable.

### D.  The United States and the public interest will be injured by a stay of the mandate

Although this is not a "close case," *see Nara*, 494 F.3d at 1133, we

note that, on balance, the public interest favors the United States.

When the government is a party, assessing the harm to it and weighing

the public interest merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009);

*Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir.

2012).  Because this is a dispute between two governments, we address

the public interest that each government is trying to protect.

The IRS has determined that micro-captive insurance has the

potential for tax avoidance or evasion.  Unscrupulous promoters can

persuade companies to use micro-captive insurers as a vehicle for

improper deductions instead of as bona fide insurance.  (Op. 11-12.)

The IRS is investigating Artex and Tribeca to determine whether they

are liable for penalties under I.R.C. § 6700 for promoting micro-captive

insurance as an abusive tax shelter.  (Op. 12.)  The IRS is protecting the

public fisc by investigating the possible evasion of taxes, which are "the

-13-

lifeblood of government" such that "their prompt and certain availability [is] an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). Yet the DDOI seeks to further delay the enforcement of the nation's tax laws while it petitions for certiorari.

On the other hand, as explained above, compliance with an IRS summons will not harm the DDOI's ability to license and regulate captive insurance companies. Furthermore, the unsoundness of a captive insurer primarily endangers its captor, not the general public, and the abusive micro-captives with which the IRS is concerned will often be the most actuarily sound, having accumulated inflated premiums to cover esoteric or implausible risks. (*See* Op. 11-12.)

In short, the public interest would be harmed by a further delay in the IRS's investigation while the DDOI prepares a petition for certiorari, which the Supreme Court will not consider until sometime after it begins its new Term in October.

-14-

# CONCLUSION

The DDOI's motion for a stay of the mandate should be denied.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ *Anthony T. Sheehan*

| | |
|---|---|
| FRANCESCA UGOLINI | (202) 514-3361 |
| MICHAEL J. HAUNGS | (202) 514-4343 |
| ANTHONY T. SHEEHAN | (202) 514-4339 |

  *State Bar No. Illinois 6210019*
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
DAVID C. WEISS
  *United States Attorney*

JULY 3, 2023

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rule 28.3(d), it is hereby certified that, because the attorneys on this opposition represent the Federal Government, the requirement that at least one attorney must be a member of the Bar of this Court is waived.

/s/ *Anthony T. Sheehan*
ANTHONY T. SHEEHAN
*Attorney for the Appellee*

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

    1.  This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]    this document contains 2,590 words, **or**

    [ ]    this brief uses a monospaced typeface and contains \_\_\_\_\_ lines of text.

    2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]    this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]    this brief has been prepared in a monospaced typeface using _____ with _____.

    3.  The undersigned hereby further certifies that the foregoing document filed electronically with the Court is in PDF searchable format, that the text of the PDF copy is identical to the text of any paper copies, that the PDF version has been electronically scanned for viruses with Microsoft Windows Defender (updated daily), and that, according to the program, no viruses were detected.

(s)  *  /s/ Anthony T. Sheehan  *

Attorney for  Appellee United States of America

Dated:  July 3, 2023

## CERTIFICATE OF SERVICE

It is hereby certified that on July 3, 2023, a PDF copy of this opposition was electronically filed with the Clerk of this Court via CM/ECF and that all parties, through their respective counsel, were served via CM/ECF.

/s/ *Anthony T. Sheehan*

ANTHONY T. SHEEHAN
*Attorney*